UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

    File No. 1:12-CR-132

    HON. ROBERT HOLMES BELL

ERIC RUIBAL, et al.,

    Defendants.
_____/

**O P I N I O N**

This matter is before the Court on Defendants' motion to exclude the opinion testimony of the government's gang expert. (Dkt. No. 845.) For the reasons that follow, Defendants' motion will be denied.

**I.**

The government has given notice of its intent to offer expert testimony from two gang experts: City of Holland Police Detective Kristopher Haglund, and retired New Jersey State Police Officer Keith Bevacqui. The government has identified Detective Haglund as an expert on the local Holland Latin Kings ("HLK") chapter. The government has identified Mr. Bevacqui as an expert on the national Latin Kings organization, its history, its methods of operation, and how it typically interacts with local chapters. (Dkt. No. 895, Gov. Resp.; Dkt. No. 912, Gov. Supp. Resp.) The government presented the testimony of these two proposed gang experts at an evidentiary hearing that commenced on January 28, 2014, and was continued on February 12, 2014.

Detective Haglund has been employed by the Holland Police department for ten years. He has been a member of the Gang Unit since 2007 and has been involved strictly with gang matters since that time. He has investigated multiple gangs and their involvement in assaults, drive-by shootings, narcotics trafficking, and gun trafficking. He has become familiar with attributes of gang membership including graffiti, clothing, hand signs, hand shakes, tattoos, and common colors. He estimates that he has been involved in over 500 HLK-related investigations and has arrested 150 gang members. He has had 10-15 informants working for him at any given time, and he receives multiple phone calls each day about gang matters. He has transcribed over 100 hours of recordings of Latin Kings and has listened to recordings of jail calls by HLK members, recordings of HLK meetings, and recordings of HLK raps. He has read jail letters from HLK members. He has spoken to HLK members' families and girlfriends, and victims of HLK gang activities. He has learned about their activities, how they make money, how they help their members, their territories, their ethnic background, their documents, and the terminology they use. Detective Haglund received training on gangs in general from multiple law enforcement agencies, he received training in 2004 or 2005 on the Latin King Nation from Lou Savelli, of the New York City Police Department gang unit, and he received training on the Holland Latin Kings from local detectives who have worked gang investigations. Detective Haglund has taught courses and classes on gang investigations at HPD, Ottawa County, Phoenix College, and for several probation departments, and other groups who deal with troubled youth.

Detective Bevacqui was on the New Jersey State Police force for over 25 years. Between 1997 and his retirement in 2011, he served as a member of the Street Gang Unit, as the assistant bureau chief of the Organized Crime Control South Bureau, and as the Bureau Chief of the Intelligence Management Bureau. In these roles he received extensive training on criminal street gangs, was involved in over 500 gang-related investigations, authored publications and surveys relating to gangs, was an active member of several gang investigator associations and instructed law enforcement agencies and community groups on criminal street gangs. He obtained specific knowledge of the National Latin Kings organization and how it controls state organizations through his investigations and work with law enforcement agencies in Illinois, New Jersey, New York, Pennsylvania, Delaware, Maryland, and Massachusetts. He has been qualified as an expert witness on criminal street gangs on eight occasions in the New Jersey Superior Court, including two cases where he testified as an expert on the Latin Kings.

**II.**

Defendants move to exclude the government's proposed "expert" testimony based on their assertions that (1) the witnesses do not qualify to testify as experts under Rule 702 and *Daubert*; (2) their testimony violates Rules 401, 403, and 702 because it is unnecessary and cumulative; (3) their testimony will be based on testimonial evidence that Defendants will not be able to confront, creating a potential *Crawford* problem; (4) Detective Haglund's expert testimony will unfairly bolster his non-expert testimony; and (5) their testimony will

be directed to ultimate issues and will unfairly invade the province of the jury.

**1. Rule 702 and *Daubert***

The admissibility of expert witness testimony is governed by Rule 702 of the Federal Rules of Evidence which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The trial judge must ensure that "an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). Although *Daubert* was concerned with scientific evidence, in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court clarified that the trial judge's general gatekeeping obligation "applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Id.* at 141.

Defendants contend that the government has not demonstrated that the testimony of its proposed experts is based upon reliable principles and methods. Defendants note that the proposed experts' testimony is not based on scientific methodology or principles that have been subjected to peer review. *See Daubert*, 509 U.S. at 593 (describing factors that bear on the reliability inquiry).

The Supreme Court noted in *Kumho Tire* that "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." 526 U.S. at 152. Courts have "overwhelmingly found police officers' expert testimony admissible" on topics that are not within the experience of the average juror without requiring them to meet the specific reliability factors outlined in *Daubert*. *United States v. Thomas*, 74 F.3d 676, 682 (6th Cir. 1996), *abrogated on other grounds*, *Morales v. Am. Honda Motor Co., Inc.*, 151 F.3d 500, 515 n.4 (6th Cir. 1998). In *United States v. Tocco*, 200 F.3d 401 (6th Cir. 2000), the Sixth Circuit held that an agent's testimony in a RICO conspiracy case on "the structure, the organization, the rules, the interpretation of phrases, and jargon that's been used in [the] trial, on the tapes, the hierarchy and the roles of individuals," was "certainly relevant and reliable" under the principles of *Daubert*, *Id.* at 418-19. "This type of evidence regarding the inner-workings of organized crime has been held to be a proper subject of expert opinion because such matters are 'generally beyond the understanding of the average layman.'" *Id.* at 419 (quoting *Thomas*, 74 F.3d at 682; *see also United States v. Zerilli*, 128 F. App'x 473, 477-78 (6th Cir. 2005) (finding no error where FBI agent testified as an expert witness as to the organization, structure and rules of the Detroit Cosa Nostra family); *United States v. Kamahele*, Nos. 12–4003, 12–4005, 12–4007, 12–4015, 12–4039, — F.3d —, 2014 WL 1378269, at *6 (10th Cir. Apr. 8, 2014) (rejecting argument that officer's expert testimony violated Rule 702 because it was not based on scientific methodology).

5

Based on the evidence produced at the evidentiary hearing, it appears that Detective Haglund has the necessary training and experience to qualify as an expert and to give reliable testimony on the organizational structure of the HLK, its methods and means of operating, including the use of signs, symbols, and gang terminology, and that such information is relevant because it is not within the experience of the average juror.

Defendants do not dispute that Mr. Bevacqui has specialized knowledge about the national Latin Kings organization that is not within the experience of the average juror. They contend, however, that his proposed expert testimony is not the product of "reliable principles and methods" that apply "to the facts of the case."  (Dkt. No. 954, Defs.' Supp. Br. 1-2.) Defendants note that there are numerous differences from one gang to the next, and that Mr. Bevacqui admitted that he knows nothing about the Holland Latin Kings. Accordingly, they contend that Mr. Bevacqui will be unable to reliably apply principles and methods he learned about the national Latin Kings organization to reach any conclusions about the Holland Latin Kings.

Whether Mr. Bevacqui's information regarding the national Latin Kings organization will be relevant to the facts of this case will depend on other testimony concerning the extent to which the HLK is tied to the national Latin Kings organization.  Moreover, it was not this Court's understanding that the government intends to have Mr. Bevacqui present any conclusions about the HLK.  The Court cannot make a determination, prior to trial, that his testimony will not apply to the facts of this case.

### 2. Unnecessary and Cumulative

Defendants contend that Detective Haglund's proposed expert testimony is unnecessary and cumulative and violates Rules 401, 403, and 702 because it is based on hearsay and can more properly be introduced through direct testimony from cooperating gang members who have first hand knowledge of the HLK.

The Court is aware of no rule that would prohibit the government from using an expert witness simply because it could introduce some of the same information from witnesses with first hand information. An expert witness typically relies on a broad source of information and may be able to synthesize and present information in a different manner than another witness without the same training and experience. The Court cannot find, prior to trial, that Detective Haglund's testimony would be unnecessary and cumulative.

### 3. Right to Cross-Examination under *Crawford*

Defendants contend that the proposed gang experts' testimony violates their Sixth Amendment right to confrontation because the proposed experts are relying on the testimonial statements of others.

In *Crawford v. Washington*, 124 S. Ct. 1354 (2004), the Supreme Court held that where the government seeks to introduce testimonial statements from a witness absent at trial, the Confrontation Clause of the Sixth Amendment is violated unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the declarant. *Id*. at 1369, 1374. There is no dispute that the proposed gang experts' opinions are based in

large part on what they have learned from family members, rival gang members, members of the HLK, and recorded conversations. The fact that the experts rely on hearsay, however, does not necessarily render their expert opinions inadmissible. The Federal Rules of Evidence permit an expert to testify to an opinion that is supported by inadmissible hearsay evidence. Fed. R. Evid. 703. *"Crawford* forbids the introduction of testimonial hearsay as evidence in itself, but it in no way prevents expert witnesses from offering their independent judgments merely because those judgments were in some part informed by their exposure to otherwise inadmissible evidence." *United States v. Johnson*, 587 F.3d 625, 635 (4th Cir. 2009); *see also United States v. Kamahele*, No. 12-4003, 2014 WL 1378269 at *7 (10th Cir. Apr. 8, 2014) ("Introduction of opinion testimony does not violate the Confrontation Clause when the experts rely on their independent judgment – even when this independent judgment is based on inadmissible evidence."). "An expert witness's reliance on evidence that *Crawford* would bar if offered directly only becomes a problem where the witness is used as little more than a conduit or transmitter for testimonial hearsay, rather than as a true expert whose considered opinion sheds light on some specialized factual situation." *Johnson*, 587 F.3d at 635. "As long as he is applying his training and experience to the sources before him and reaching an independent judgment, there will typically be no *Crawford* problem. " *Id.*; *see also United States v. Pablo*, 696 F.3d 1280, 1288 (10th Cir. 2012); *United States v. Mejia*, 545 F.3d 179, 198 (2d Cir. 2008).

The government has advised that its experts will not merely recited testimonial

hearsay, but will offer their opinions based on various sources including their own investigations, evidence seized, briefings from other law-enforcement agencies, and interviews with defendants, victims, cooperating witnesses, and gang members. (Dkt. No. 975, Gov. Resp. at 8.)

The Court is on notice of the potential for Confrontation Clause issues, and it appears that the government is intending to avoid such issues. The mere possibility that a Confrontation Clause issue might arise at trial is not a basis for excluding the expert witnesses altogether.

**4. Dual Role as Expert and Fact Witness**

Defendants have raised the issue that Detective Haglund's dual role in this case as both an expert and a fact witness will cause jury confusion and will prejudice Defendants because Detective Haglund's expert testimony will unfairly bolster his non-expert testimony.

The Court is aware that there is a risk of jury confusion when a police officer testifies in a single case as both a fact witness and an expert witness. *See Tocco*, 200 F.3d at 418. Nevertheless, there is no per se prohibition of the practice of allowing an officer to testify in both capacities. *Id.* In *Tocco* the Sixth Circuit found no error in allowing an FBI agent to give both fact and expert testimony in a RICO conspiracy case. *Id.* at 419. The government has advised that it will call Detective Haglund to offer opinion testimony at the beginning of the trial, and that his fact testimony will be presented later in the trial. The Court is satisfied that Defendants' interests can be adequately protected by separating Detective

Haglund's expert testimony from his fact testimony in this manner and by giving the jury appropriate cautionary instructions. *See Ham*, 628 F.3d at 806 (noting that when a witness gives both fact and expert testimony, the district court must give a cautionary jury instruction regarding the witness's dual roles or there must be a clear demarcation between the witness's fact testimony and expert opinion testimony).

**5. Ultimate Issues of Fact/Invade the Province of the Jury**

Defendants contend that the proposed expert testimony will invade the province of the jury because the experts will give opinions as to the existence of a corrupt organization and Defendants' membership in that organization, which are among the key findings for the jury.

Although Rule 704(a) generally allows an expert to give an opinion on an ultimate issue, Rule 704(b) provides:

> In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone.

Fed. R. Evid. 704(b). Furthermore, "[a] witness, lay or expert, may not form conclusions for a jury that they are competent to reach on their own." *United States v. Freeman*, 730 F.3d 590, 597 (6th Cir. 2013). In *Freeman* the Sixth Circuit vacated a conviction where the agent's testimony consisted of "many opinions and conclusions the jury was well equipped to draw on their own." *Id.* He effectively spoon-fed his interpretations of the phone calls and the government's theory of the case to the jury, interpreting even ordinary English language." *Id.* at 597.

10

The government has advised that neither of its expert witnesses will present opinions on the legal conclusions of whether (1) the Latin Kings is an enterprise under the RICO statute, (2) any defendant's actions are racketeering predicate acts under RICO, or (3) the mental state of any defendant on trial. (Dkt. No. 895, Gov. Resp. at 2-3.)

While there is a possibility that the experts could give testimony on ultimate issues or invade the province of the jury, it appears that it is not the government's intention to elicit such testimony. The mere possibility that an expert might give testimony at trial on an ultimate issue of fact is not a basis for excluding the expert witnesses altogether.

The Court will deny Defendants' motion to exclude the government's expert witnesses from testifying as experts at trial. The law provides a solid basis for allowing limited testimony on the structure and organization of the national and local Latin Kings organization. This ruling is not intended, however, to preclude Defendants from objecting to specific testimony of these experts at trial.

An order consistent with this opinion will be entered.


Dated: <u>April 18, 2014</u>              /s/ Robert Holmes Bell
                                          ROBERT HOLMES BELL
                                          UNITED STATES DISTRICT JUDGE