# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                                File No. 1:12-cr-132

v.

                                HON. JANET T. NEFF

FRANK CISNEROS,

        Defendant.

_____/

## AMENDED OPINION

Before the Court is Defendant Frank Cisneros' amended motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (ECF No. 1745), and supplements thereto (ECF Nos. 1779, 1781). The Government filed responses to the amended motion and its supplements (ECF Nos. 1765, 1785), and Defendant filed a reply (ECF No. 1808).

In January and February 2019, the Court entered an opinion and judgment denying the motion under § 2255. Thereafter, Defendant filed a motion to alter or amend judgment under Rule 59(e). On August 12, 2019, the Court vacated the judgment and granted Defendant's Rule 59 motion with respect to one claim: Defendant's claim that his attorney provided ineffective assistance by telling Defendant that he faced a life sentence if he proceeded to trial, without discussing the Sentencing Guidelines. On September 23, 2019, the Court held an evidentiary hearing on this claim, and the parties subsequently filed briefs arguing their respective positions. (ECF Nos. 1930, 1931.) The Court hereby enters an amended opinion denying the motion under § 2255.

# I. Background

## A. Indictment

In February 2013, Defendant and 30 other members of a gang called the Holland Latin Kings were charged with multiple crimes. Defendant was named in Count One, participation in a racketeering conspiracy, 18 U.S.C. § 1962(d), and Count Twelve, conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 18 U.S.C. §§ 846 and 841(a). (Third Superseding Indictment, ECF No. 68, PageID.266, 313.) Count One alleged a conspiracy beginning in 1993 and continuing to 2013 that involved murder, assault, arson, and the distribution of cocaine and marijuana.

## B. First Proffer

Defendant participated in a proffer with the Government within a few weeks after the indictment. His attorney, Raymond Buffmyer, was also present. (*See* Report of Investigation, ECF No. 1755.) At the proffer, Defendant acknowledged that he held leadership positions in the HLK in 1994 and 1998. (*Id.*) He also stated that he distributed 2 kilograms of cocaine with members of the HLK in 1998, and "a lot" of cocaine in 2011. (*Id.*, PageID.22291.) In addition, he received small quantities of cocaine on a number of occasions from other members of the HLK in 2012. The Government ended the proffer interview when it became clear that Defendant was not being completely truthful about his participation; he told the interviewing agents that he would not be completely honest unless he was guaranteed that he would not have to testify against the HLK. (*Id.*, PageID.22292.)

## C. Superseding Indictment

In July 2013, the grand jury returned a Fourth Superseding Indictment charging Defendant with the same offenses: participation in a racketeering conspiracy (Count One) and conspiracy to distribute five kilograms or more of cocaine (Count Fourteen). (ECF No. 480,

PageID.2150, 2191.)  The latter indictment also contained a "Special Sentencing Allegation" regarding Defendant as to Count One, alleging that the racketeering conspiracy involved the distribution of 5 kilograms or more of cocaine.  (*Id.*, PageID.2170-2171.)  The indictment alleged that Defendant possessed 543 grams of cocaine and tools for distribution in 1998, possessed and/or sold cocaine in 2008 and 2012, possessed a firearm in 2008, and attended leadership meetings with other HLK members in 2011.

### D.  Unsuccessful Attempt to Dismiss Charges or Suppress Evidence

In August 2013, Defendant's attorney filed a motion to dismiss Count One of the indictment or to suppress evidence related to it because the prosecutor had given Defendant immunity many years earlier.  (Corrected Mot. to Dismiss, ECF No. 478.)  In August 2000, Defendant had testified before a federal grand jury about selling drugs to members of the HLK.  In connection with that testimony, the prosecutor promised Defendant that any statements he made to the grand jury with respect to his "involvement in buying or selling illegal drugs with the Latin Kings" or with respect to his "knowledge of individuals in the Latin Kings possessing illegal firearms" would not be used against Defendant in a criminal prosecution.  (Grand Jury Tr. 5-6, ECF No. 565-6.)  Accordingly, Defendant's attorney argued that the conspiracy charges should be dismissed to the extent that they relied upon evidence derived from Defendant's immunized statements.  Counsel asked for a hearing in accordance with *Kastigar v. United States*, 406 U.S. 441 (1972), to determine the extent to which the pending charges relied upon evidence derived from Defendant's immunized statements.

The Court denied Defendant's motion, holding that *Kastigar* only applied to defendants who have been granted statutory immunity; it did not apply to Defendant, who had been given an informal grant of immunity.  (9/5/2013 Op., ECF No. 604.)  An informal grant of immunity can be enforced like a contract, but there was no indication that the Government had breached its

promise to Defendant.  The Government asserted that it was aware of Defendant's pre-August 2000 drug-trafficking activity before his grand jury appearance, and that it did not intend to use his grand-jury testimony against him at trial.  (*Id.*)

### E.  Second Proffer and Plea Agreement

In early October 2013, the Government offered to meet with Defendant again. (10/2/2013 Letter to Def., ECF No. 1755, PageID.22297.)  He apparently accepted the offer, and then a few days later, he signed a plea agreement acknowledging guilt for the racketeering charge in Count One of the Fourth Superseding Indictment, in exchange for the dismissal of Count Fourteen and the "special sentencing allegation" in Count One.  (Plea Agreement, ECF No. 680.)  The Government also agreed not to bring additional charges against Defendant arising out of his involvement with the HLK, provided that such conduct was disclosed prior to the date of the plea agreement.  Defendant agreed to cooperate with the Government in its investigation of other charges in the indictment, and the Government agreed to evaluate Defendant's cooperation to determine whether to file a motion for sentence reduction.

The plea agreement provided a significant benefit for Defendant.  By dismissing Count Fourteen and the special sentencing allegation in Count One, it reduced his maximum possible sentence from a term of life in prison to 20 years.  *See* 21 U.S.C. § 841(b)(1)(A) (setting forth the punishment for conspiracy to distribute 5 kilograms or more of cocaine).  In addition, he stood to gain by receiving credit for acceptance of responsibility under the Sentencing Guidelines.

### F.  Plea Hearing

Defendant entered his plea on October 11, 2013, at a hearing before United States District Judge Robert Holmes Bell.  At the plea hearing, Defendant affirmed that he had received an "adequate and ample" opportunity to discuss his case with his lawyer and that he was satisfied with his attorney's representation of him.  (*See* Plea Hr'g Tr. 5, ECF No. 811.)  Defendant also

accepted the description of his involvement with the HLK as indicated in the indictment and as summarized by the prosecutor at the hearing, which included the fact that Defendant possessed 543 grams of cocaine in 1998, along with implements commonly used for distribution, and that he sold cocaine to various individuals on four separate occasions in April and June 2012. (*Id.* at 7.) Defendant told the Court that he became a member of the HLK in 1993, at the age of 19, and paid dues to them from 1993 to 2012. (*Id.* at 10.) However, he was not a member of the HLK throughout that entire period because he was incarcerated on several occasions, from 1998 to 2003, from 2004 to 2006, and for several months in 2010. (*Id.*)

After his release from prison in 2003, Defendant sold cocaine on behalf of the HLK ten or fifteen times. (*Id.* at 17.) He also admitted to possessing a firearm on several occasions, including one firearm that he purchased from another HLK member. (*Id.* at 19.) The Court accepted Defendant's plea.

### G. Sentencing

After the plea hearing, the probation office prepared a Presentence Investigation Report ("PIR"), scoring Defendant with a base offense level of 32 because his participation in the racketeering conspiracy made him responsible for distribution of 5 kilograms of cocaine and 550 pounds of marijuana, which is the equivalent of over 1,000 kilograms of marijuana. (PIR ¶ 870, ECF No. 1125.) The PIR added two points to the offense level because Defendant possessed a firearm on several occasions in connection with the conspiracy, and another three points to account for Defendant's leadership role in the conspiracy. According to the PIR, Defendant held several "managerial" positions with the HLK, which meant that he was the manager of criminal activity involving five or more participants under U.S.S.G. § 3B1.1(b). (*Id.* ¶ 874.) The PIR also reduced Defendant's offense level by three points to account for his acceptance of responsibility and his

assistance to the authorities, resulting in an adjusted offense level of 34 and a criminal history score of V. (*Id.* ¶¶ 872, 898.)

Judge Bell sentenced Defendant on September 24, 2014, after delaying the proceedings for several weeks to allow Defendant to recover from back surgery. Defendant's attorney initially objected to the enhancement of Defendant's offense level for his possession of a firearm (Sentencing Mem., ECF No. 1124); however, counsel dropped that objection at the sentencing hearing because Defendant purportedly acknowledged to his attorney that he had access to a firearm when protecting his home. According to counsel, "there would be an enhancement because he would have 12 examples [of possession] or five examples or three. They need only one." (Sentencing Hr'g Tr. 5, ECF No. 1303; *see also* PIR ¶¶ 168, 310, 347, 396, 620, 645, 683 (describing instances in which Defendant purportedly used or possessed a firearm).)

Defendant's counsel also argued that the criminal history score overstated the seriousness of Defendant's history, and Judge Bell agreed. He reduced Defendant's criminal history score from V to IV. (Sentencing Hr'g Tr. 9.) Using an adjusted offense level of 34 and a criminal history score of IV, Judge Bell sentenced Defendant at the bottom of the Guidelines range to 210 months of imprisonment. (J., ECF No. 1247.)

### H. Appeal

Defendant appealed his sentence, raising several arguments. He contended (1) that his sentence was unreasonable, (2) that he should not have been assessed enhancements for his leadership role or for possession of firearms, and (3) that his counsel was ineffective for failing to contest those enhancements. *See United States v. Penaloza*, 648 F. App'x 508, 527 (6th Cir. 2016).

On May 12, 2016, the Court of Appeals for the Sixth Circuit affirmed Defendant's sentence. *Id.* It held that his sentence was substantively reasonable. *See id.* at 528. It also found that he waived his challenge to the firearms enhancement, and that this Court's application of the

leadership enhancement was not plain error. *Id.* at 529-30. However, the court of appeals declined to consider Defendant's claim regarding ineffective assistance of counsel. *Id.* at 529.

## II. Motion under § 2255

Defendant now raises the following issues in his amended motion under § 2255 and supplements thereto:

I.     Denial of effective assistance of counsel[.]

II.     Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea[.]

III.     Conviction obtained by the unconstitutional failure of prosecution to disclose to the defendant evidence favorable to the defendant[.]

IV.     Conviction obtained by use of coerced confession[.]

V.     Conviction for RICO conspiracy offense under 18 U.S.C. § 1962(d) not substantive or cannot stand[.]

VI.     Conviction obtained by use of court err[or.]

VII.     Sentence based on miscalculated guideline scoring and information[.]

VIII.     Sentencing corrections or adjustments[.]

IX.     Conviction obtained by a violation of the privilege against self-incrimination.

X.     Ineffective Assistance of Appellate Counsel.

XI.     Administrative Segregation / Isolated Confinement[.]

(ECF Nos. 1745, 1779, 1781.)

The Government argues that the motion should be denied because the grounds for relief are procedurally defaulted and/or meritless.

### III. Standards

#### A. Merits

A prisoner who moves to vacate his sentence under § 2255 must show that the sentence was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence was in excess of the maximum authorized by law, or that it is otherwise subject to collateral attack. 28 U.S.C. § 2255. To prevail on a § 2255 motion "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)). Non-constitutional errors are generally outside the scope of § 2255 relief. *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000). A petitioner can prevail on a § 2255 motion alleging non-constitutional error only by establishing a "fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (internal quotations omitted)).

#### B. Procedural Default

As a general rule, claims not raised on direct appeal are procedurally defaulted and may not be raised on collateral review unless the defendant shows either (1) "cause" and "actual prejudice" or (2) "actual innocence." *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley v. United States*, 523 U.S. 614, 621-22 (1998); *United States v. Frady*, 456 U.S. 152, 167-68 (1982). An ineffective assistance of counsel claim, however, is not subject to the procedural default rule. *Massaro*, 538 U.S. at 504. An ineffective assistance of counsel claim may be raised in a collateral proceeding under § 2255, whether or not the defendant could have raised the claim on direct appeal. *Id.*

## C. Evidentiary Hearing

The court must hold an evidentiary hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ." 28 U.S.C. § 2255(b). No hearing is required if Defendant's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quotation omitted).

## IV. Analysis

### *Ground One:* Ineffective Assistance of Counsel

Defendant asserts that he received ineffective assistance of counsel at the trial court level for the following reasons: (1) counsel did not conduct an adequate investigation into various matters before the plea; (2) counsel failed to halt the plea hearing due to the fact that Defendant was under the influence of narcotic medication, and did not object to Defendant's statement that he was not taking such medication; (3) counsel improperly "exposed" Defendant's immunity by filing the motion to dismiss the indictment; (4) counsel did not correct the Court's purported error regarding "derivative use" immunity or make use of that immunity; (5) counsel misled Defendant about who requested the proffer; (6) counsel did not adequately prepare Defendant for a proffer with the Government; (7) counsel did not adequately inform Defendant of the consequences of the plea agreement; (8) counsel did not object to the prosecution's "direction" to Defendant regarding his guilt, particularly as it pertained to conduct "immunized" by Defendant's grand jury testimony; (9) counsel failed to inform Defendant that he could withdraw his plea; (10) counsel did not inform Defendant that he was aware, before sentencing, that the Government would not fulfill its promise to seek a sentence reduction; (11) counsel erroneously informed Defendant that he could not contest the "weights and leadership enhancements"; (12) counsel failed to postpone the sentencing hearing

to allow Defendant to recover from back surgery; (13) counsel did not adequately establish Defendant's "withdrawal and complete dissociation" from the HLK in 1999 and Defendant's work with non-profit organizations; (14) counsel did not obtain information about the use of Defendant's proffer in sentencing a co-defendant; (15) counsel did not use a co-defendant's testimony to establish that the HLK was not operating for a period of time; (16) counsel withdrew a challenge to the firearms enhancement; and (17) counsel failed to seek a downward departure for a "completed term of imprisonment," under U.S.S.G. § 5K2.23.[1]

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

---

[1] The Court will refer to the foregoing as Issues 1 to 17.

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.* In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

### A. Pre-Plea Investigation (Issue 1)

Defendant asserts that counsel failed to investigate his withdrawal from the HLK in 1999. In addition, Defendant apparently argues that the four months of conduct alleged in Count Fourteen would not have been enough to warrant the charge of conspiring to distribute 5 kilograms or more of cocaine.

There are several problems with Defendant's argument regarding the sufficiency of counsel's pre-plea investigation and the sufficiency of the evidence in support of the charges against him. First, Defendant waived any challenge to counsel's conduct before the plea hearing and to the sufficiency of the evidence supporting the indictment when he entered his guilty plea. It has long been the case that a valid guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Claims about the deprivation of constitutional rights that occur before the entry of a guilty plea are foreclosed by that plea. *See United States v. Broce*, 488 U.S. 563, 569 (1989). As the United States Supreme Court has explained,

> a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter

raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [constitutional standards].

*Tollett*, 411 U.S. at 267. Consequently, a knowing and voluntary guilty plea waives all nonjurisdictional defects in the proceedings, including a claim of ineffective assistance of counsel that does not relate to the validity of the plea. *See Rice v. Olson*, No. 16-1125, 2016 WL 3877866, at *2 (6th Cir. July 15, 2016) (citing *United States v. Stiger*, 20 F. App'x 307, 308-09 (6th Cir. 2001)). Accordingly, Defendant's plea waived any challenge to the sufficiency of the evidence supporting the indictment, and to counsel's actions related to the indictment or to any investigation of Defendant's involvement in the HLK.

In addition, Defendant's assertion that his counsel should have conducted a more thorough investigation of Defendant's withdrawal from the HLK in 1999 is meritless because that fact was never contested by the Government, and it is irrelevant to Defendant's guilt and sentence. The PIR stated that Defendant renounced his membership with HLK in 1999, while he was in prison, but that he resumed his membership in 2008, after his release. (PIR ¶ 679.) Judge Bell apparently accepted this description:

> THE COURT: . . . I have you as renouncing your membership in 1999 while in prison. You're coming out of prison and once again becoming a member in 2008, and then I have you taking part in certain RICO events that related to cocaine and marijuana as part of the conspiracy after that. Did you?
>
> DEFENDANT CISNEROS: Yes, Your Honor, I did. Yes, I did.

(Sentencing Hr'g Tr. 20-21, ECF No. 1303.)

Furthermore, Defendant's withdrawal from the HLK in 1999 does not change the fact that he worked with other members of the HLK to distribute drugs before that time. Nor does it change the fact that he effectively rejoined the HLK after his release from prison and worked with its members to distribute drugs over a period of several years after 2008. His departure from the

group for several years does not absolve him of guilt for his part in the conspiracy before and after that departure.

Defendant contends that he was involved with the HLK for only a few months in or after 2008, but that does not make him any less guilty of participation in a long-running conspiracy. There was no reason for counsel to uncover additional evidence of uncontested facts that were irrelevant to Defendant's guilt and sentence. Thus, even assuming Defendant has not waived this claim, he has not shown unreasonable conduct by counsel or prejudice.

Finally, to the extent Defendant believes that there was insufficient evidence to support Count Fourteen of the indictment, Defendant cannot show prejudice. The Government agreed to dismiss Count Fourteen as part of the plea agreement. Consequently, as to that Count, Defendant's plea achieved the same result as a pre-plea challenge to the indictment. Accordingly, Defendant cannot demonstrate that the outcome would have been any different if counsel had challenged Count Fourteen.

### B. Other Pre-Plea Conduct

#### 1. Exposing immunity agreement (Issues 3, 4)

Defendant asserts that counsel improperly exposed Defendant's grand jury testimony and immunity agreement by filing the motion to dismiss the indictment, and then failed to challenge the Court's ruling on that motion.

For the reasons stated in the previous section, Defendant has waived his claim that counsel was ineffective in the manner in which he handled Defendant's grant of immunity. These actions occurred before entry of the plea and do not undermine the knowing or voluntary nature of that plea.

Moreover, Defendant has not shown unreasonable conduct by his attorney or prejudice. Counsel attempted to use the grant of immunity to dismiss the charges against Defendant

or to exclude evidence against him, but counsel was not successful.  Defendant does not indicate what else counsel could have done that would have changed the outcome of his proceedings.  His allegations on these issues—including his reference to "derivative use" immunity—are vague and conclusory.

## 2.  Preparation for proffer (Issues 5, 6)

Defendant contends that his attorney failed to adequately prepare him for a proffer with the Government, and misled Defendant about several facts.  In particular, Defendant contends that his attorney told him that his co-defendants would lie about his involvement in the conspiracy, leading Defendant to believe it was appropriate for him to lie and admit he was an active member.  In addition, Defendant contends that he was under the impression that the prosecutor requested the proffer, when in fact Defendant's attorney requested it.

For the same reasons stated in the previous section, Defendant's guilty plea waived his ability to challenge his attorney's performance with respect to the proffer, which occurred prior to the plea.  Defendant's preparation for the proffer, or lack thereof, has no bearing on the validity of his plea.

Furthermore, Defendant has not satisfied the performance prong of *Strickland*.  He asserts that he was under the impression that it was appropriate to lie about his involvement with the HLK simply because his attorney told him that his co-defendants would lie about Defendant's actions.  That impression, however, does not suggest that counsel's performance was unreasonable.  Rather, it suggests that Defendant was irrational.  Moreover, even if Defendant was under the impression that he should lie, the Court made clear to Defendant at his plea hearing that his truthfulness was important.  (Plea Hr'g Tr. 4.)  In addition, before pleading guilty, Defendant swore an oath to tell the truth under penalty of perjury.  Thus, even if Defendant lied during his proffer

interview, his attorney's statements could not have misled him about his obligation to tell the truth when it really mattered, which was at his plea hearing.

To the extent Defendant contends that his attorney misled him about whether the Government or his attorney initiated the proffer request, it is not clear how that misunderstanding could have had any significant impact on Defendant's decision to plead guilty.

## C. Preparation for Plea (Issue 7)

Defendant asserts that his attorney did not adequately inform him of the charge to which he pleaded guilty and of the consequences of the plea agreement. In particular, Defendant contends that counsel did not inform him of "the consequences if [the] government decided not to fulfill their promise, which [it] did not. Counsel merely stated, once at proffer, that 108 months was better than life, which counsel convi[n]ced defendant he would be sentenced to without cooperation[.]" (Am. § 2255 Mot., PageID.22222.)

The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill*, 474 U.S. at 56 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). In order to find constitutionally valid guilty plea, several requirements must be met. The defendant pleading guilty must be competent, *see Brady v. United States*, 397 U.S. 742, 756 (1970), and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state- induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void.").

15

The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted). Finally, the defendant must have available the advice of competent counsel. *Tollett*, 411 U.S. at 267-68; *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970). The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made. *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel). Ineffective assistance of counsel can render a plea of guilty involuntary. *See Hill*, 474 U.S. at 56-57.

### 1. Advice about the consequences of accepting the plea

Defendant contends that his attorney erroneously informed him that he would receive a sentence of 108 months if he pleaded guilty and cooperated with the Government. This assertion is contradicted by the plea agreement and by Defendant's sworn statements to the Court.

The plea agreement expressly states that Plaintiff could receive a sentence of up to 20 years' imprisonment and three years of supervised release. (Plea Agreement ¶ 3, ECF No. 680.) The agreement also informed Defendant that the Court would make the final determination regarding the sentence after consulting the Sentencing Guidelines, and that "no one – not the prosecutor, the defendant's attorney, not the Court – can make a binding prediction or promise regarding the sentence the defendant will receive." (*Id.* ¶ 11.)

As to the prosecutor's obligation to ask for a sentence reduction in connection with Defendant's cooperation, the plea agreement states:

> The United States Attorney's Office agrees to evaluate the defendant's cooperation under this agreement in determining whether or not to file a motion for departure or reduction of sentence pursuant to the Guidelines Section 5K1.1 and/or Federal Rule of Criminal Procedure 35(b). The defendant fully understands that such a motion may be made pursuant to law if, and only if, the defendant fully cooperates with the government and materially and substantially assists the government in the investigation or prosecution of others. The determination of whether the defendant has provided substantial assistance to the United States shall be made in the sole discretion of the United States Attorney's Office . . . . *The defendant fully understands that this paragraph is not a promise by the government to file such a motion*. . . .

(*Id.* ¶ 7(E) (emphasis added).)

Immediately above Defendant's signature, the plea agreement states the following:

> I have read this agreement and carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. No promises or inducements have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

(*Id.*, PageID.3977.)

Defendant made similar representations at his plea hearing. He told the Court that he understood that his maximum sentence would be 20 years in prison and that the Court would consider the Sentencing Guidelines before entering its sentence. (Plea Hr'g Tr. 8-9.) Judge Bell asked Defendant whether anyone "made any promise of leniency *or prediction of what the sentence might be* if your plea were to be accepted?" and Defendant responded, "No, Your Honor." (*Id.* at 9 (emphasis added).)

In addition, Defendant told the Court that he had discussed his plea agreement with counsel before the plea hearing:

THE COURT: Okay. And you've indicated that you have discussed this agreement with your client and advised him of his rights and possible defenses to the sentencing provisions and the consequences of entering into this agreement where you were to plead guilty to this first count charging you with conspiracy to engage in racketeering activity. Is that correct, Mr. Buffmyer?

[DEFENDANT'S ATTORNEY]: That is correct, Your Honor. I've reviewed this in detail with him several times and we've discussed the statute and all possible relevant defenses.

THE COURT: And the defenses and the sentencing provisions and the consequences of entering into this agreement?

[DEFENDANT'S ATTORNEY]: We have Your Honor. We've scored it several different ways because we're not exactly sure how some of these other contemporaneous acts will work, but we've sat down and done all that over a several-hour period of time. Thank You.

THE COURT: Is that correct, Mr. Cisneros, that he has discussed it with you?

DEFENDANT CISNEROS: Yes, it is, Your Honor.

THE COURT: And you understand this charge and the terms of this agreement and you understand your defenses that you might have and the sentencing provisions, and most importantly, the consequences of entering into this plea?

DEFENDANT CISNEROS: Yes, I do, your honor.

(*Id.* at 3-4.)

Under settled Sixth Circuit authority, a defendant is bound by his statements given under oath at the plea hearing. *See Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) ("[W]here the court has scrupulously followed the required procedure [under Rule 11 of the Federal Rules of Criminal Procedure], 'the defendant is bound by his statements in response to that court's inquiry.'") (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir. 1976)). In this case, that means Defendant is bound by his representations that he reviewed his plea agreement with his attorney and understood the consequences of pleading guilty, including the possibility that he could receive a sentence of up to 20 years in prison. He is also bound by his representation that no one made a promise or

prediction of what sentence he might receive. Thus, he cannot now claim that he pleaded guilty on the assumption that he would receive a sentence of 108 months.

Defendant's claim is similar to one raised by the defendant in *United States v. Todaro*, 982 F.2d 1025 (6th Cir. 1993), who attempted to attack his guilty plea by claiming that his attorney had promised him that he would be sentenced to probation if he pleaded guilty. The Court of Appeals for the Sixth Circuit rejected this claim because the defendant testified at the plea colloquy that no promises had been made to him other than those stated in the plea agreement. *Id.* at 1026. "To allow collateral attacks on guilty pleas to be based upon such claims would make every plea subject to attack and render the oral responses given in court meaningless." *Warner v. United States*, 975 F.2d 1207, 1212 (6th Cir. 1992). Likewise, to allow Defendant to attack the assistance that he received by counsel on factual grounds that are inconsistent with his sworn statements to the Court would render his statements meaningless.

Moreover, even assuming that Defendant's counsel represented that Defendant would receive a sentence of 108 months, Defendant would not be entitled to relief because Judge Bell properly informed Defendant what his maximum sentence could be, and indicated that he would determine the sentence after consulting the guidelines. This information rectified any misunderstanding that Defendant may have had. *See Cadavid-Yepes v. United States*, 635 F. App'x 291, 299 (6th Cir. 2016) ("[E]ven if counsel gives a defendant erroneous information, a defendant is not entitled to relief if the misinformation is 'directly refuted on the record' by the district judge during a plea colloquy." (quoting *Todaro*, 982 F.2d at 1029)); *see also United States v. Contreras-Armendariz*, 107 F. App'x 594, 596-97 (6th Cir. 2006) (where the court "reviewed the rights that Contreras was waiving, the factual and legal nature of the offenses with which he was charged, and the potential sentences he faced as a result of the guilty plea," the plea was knowing and voluntary despite Contreras' mistaken belief his criminal history category was lower than it was ultimately

determined to be); *United States v. Stephens*, 906 F.2d 251, 254 (6th Cir. 1990) (where a defendant is aware of the maximum possible sentence he faces, the fact that his attorney incorrectly estimated the guidelines does not justify withdrawal of a plea).  Consequently, Defendant cannot claim that he was prejudiced by his attorney's advice.

Defendant also argues that Buffmyer did not adequately inform him of the consequences of pleading guilty if the Government did not fulfill its "promise."  Presumably, Defendant is referring to the Government's obligation to consider filing a motion to reduce Defendant's sentence if he provided sufficient assistance to the Government's investigation.  The Government never filed such a motion, so Defendant apparently believes that it did not comply with a promise that it made in the plea agreement.  Defendant does not state a viable claim, however, because the plea agreement expressly disclaimed any such promise.  The plea agreement gave the Government sole discretion to determine whether Defendant had provided sufficient assistance to merit a motion for reduction in sentence.  Defendant does not indicate what counsel should have done differently when advising Defendant.  Thus, Defendant has not established unreasonable performance or prejudice as to this claim.

### 2.  Advice about the consequences of rejecting the plea

Defendant also contends that his attorney did not provide adequate advice about the sentencing consequences of rejecting the plea and going to trial.  Buffmyer allegedly told Defendant that he faced a life sentence, but did not discuss Defendant's exposure under Sentencing Guidelines or inform Defendant that the Court has discretion to issue a sentence below the statutory maximum. Defendant contends that the possibility of a life sentence was a significant factor in his decision to plead guilty, and that he would not have "cooperated" with the Government (i.e., he would not have pleaded guilty) if he had been adequately informed that the Court would consider the Guidelines before issuing its sentence.

Buffmyer tells a different story. In an affidavit, Buffmyer asserts that he received an email from the prosecutor in September 2013 (a few weeks before Defendant's plea) containing estimates of Defendant's sentencing guidelines range if he pleaded guilty or went to trial. The prosecutor estimated Defendant's guidelines range as 293 to 365 months if a jury found him guilty of the charges after a trial, and 210 to 262 months if Defendant pleaded guilty to Count One and received credit for acceptance of responsibility; Buffmyer discussed this email with Defendant. (Buffmyer Aff., ECF No. 1755, PageID.22279-22280; Email to Buffmyer, ECF No. 1755, PageID.22294.)

In *Smith v. United States*, 348 F.3d 545 (6th Cir. 2003), the Court of Appeals for the Sixth Circuit indicated that counsel has a duty to explain a defendant's possible sentencing exposure under the Guidelines before the defendant accepts a plea offer:

> A criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available. In a system dominated by sentencing guidelines, we do not see how sentence exposure can be fully explained without completely exploring the ranges of penalties under likely guideline scoring scenarios, given the information available to the defendant and his lawyer at the time. *See United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992) (observing that "the Sentencing Guidelines have become a critical, and in many cases, dominant facet of federal criminal proceedings" such that "familiarity with the structure and basic content of the Guidelines (including the definition and implications of career offender status) has become a necessity for counsel who seek to give effective representation."). The criminal defendant has a right to this information, just as he is entitled to the benefit of his attorney's superior experience and training in the criminal law.

*Id.* at 553.

In other words, counsel must provide some information to the defendant about his possible sentencing exposure under the Guidelines were the defendant to accept the plea, and a similar estimate about his sentencing exposure were the defendant to reject the plea, so that the

defendant can intelligently weigh the two options available. An attorney's failure to provide this sort of information may constitute unreasonable performance under *Strickland*.

As to prejudice, courts must look at the "totality of the evidence" to determine whether there is a reasonable likelihood that the defendant would have made a different decision about the plea. *Lee v. United States*, 137 S. Ct. 1958, 1966 (2017). Where the defendant contends he would *not* have accepted the plea, relevant factors to consider include "whether the defendant had a viable defense, as well as the respective consequences of a conviction after trial and by plea." *United States v. Pola*, 703 F. App'x 414, 423 (6th Cir. 2017). The Supreme Court has admonished courts not to "upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee*, 137 S. Ct. at 1967.

The Court held an evidentiary hearing on September 23, 2019, to resolve the factual dispute about whether or not Buffmyer informed Defendant of his possible exposure under the Sentencing Guidelines if a jury convicted him of the charges in the superseding indictment. Defendant and Buffmyer testified at the hearing.

Defendant testified that Buffmyer advised him to plead guilty on three different occasions. The first two times, Defendant decided against it. After the third time, Defendant agreed. According to Defendant, he changed his mind because Buffmyer told him that if he went to trial he would be sentenced to life in prison. Defendant stated that Buffmyer never discussed the sentencing guidelines that would apply if a jury convicted Defendant of the charges against him.

Buffmyer testified that he is an attorney with 42 years of experience. He has represented "dozens and dozens" of defendants in federal court. (Evidentiary Hr'g Tr. 21, ECF No. 1929.) He met with Defendant 27 times, for a total of about 20 hours, before the plea hearing. His

standard practice is to review the sentencing guidelines with a defendant at one of their first meetings, and to try to calculate what the guidelines range would be if they went to trial because, in his experience, the guidelines are the "bottom line" for criminal defendants. (*Id.* at 22.) He followed this practice with Defendant. In fact, they discussed the guidelines "ad nauseum." (*Id.* at 29.) Buffmyer also discussed the guidelines with the prosecutors on a regular basis. When making its final plea offer, the Government sent him an email estimating Defendant's sentencing exposure for going to trial. Buffmyer gave a copy of that email to Defendant and discussed it with him. Buffmyer never stated that Defendant would definitely receive a life sentence if he went to trial because Defendant's guidelines did not approach a life sentence and Buffmyer did not think Defendant would receive that sentence. However, Buffmyer did inform Defendant that he *could* receive a life sentence because that is what the statute allows.

According to Buffmyer, the Government initially offered a plea with better terms, subject to Defendant's truthful cooperation. The first proffer session did not go very well, however, because Defendant did not want to cooperate. He did not want to answer questions put to him by the Government. By the time that Defendant finally agreed to cooperate and plead guilty, his cooperation was not as valuable because many of his co-defendants had made arrangements to enter guilty pleas and were cooperating with the Government. Defendant initially believed that his fellow gang members would never testify against him, but as time passed almost all of his co-defendants decided to plead guilty to charges against them. Buffmyer believed that these individuals would likely testify against Defendant, and he conveyed this belief to Defendant.

Defendant initially acknowledged his membership in the HLK to Buffmyer and to the Government in one of his proffer interviews, but Defendant believed he could defend himself by challenging witnesses who claimed that he was involved in drug trafficking with the HLK. Later, however, as the evidence against Defendant piled up, Defendant changed course and claimed that

23

he was not part of the gang because he left it. Buffmyer, however, did not believe that lack of membership was a viable defense and said as much to Defendant. Buffmyer believed that Defendant would likely be convicted if he went to trial. Eventually, Defendant agreed to cooperate and take a plea deal.

After considering the testimony from the evidentiary hearing and the other evidence in the record of the case, the Court finds that Buffmyer fulfilled his obligation to explain Defendant's sentencing exposure under the Guidelines if Defendant decided not to accept the plea agreement. The Court makes this finding for several reasons.

First, Defendant is not a credible witness. As discussed elsewhere in this Opinion, Defendant makes a number of assertions in his motion under § 2255 that do not line up with his sworn testimony at his plea hearing. He testified at his plea hearing that no one made a promise or prediction about the sentence that he would receive, but he now claims that his attorney promised that he would receive a sentence of 108 months. (*See* Section IV.C.1, below.) He also testified at his plea hearing that his decision to plead guilty was a free and voluntary one, but he now claims that it was motivated by a "coerced" confession. (*See* Ground Four, below.) And he told the Court that he was not taking medication that could affect his ability to participate in the plea hearing, but he now claims otherwise. (*See* Section IV.D.1, below.) He even acknowledges in his motion that he thought it was appropriate to lie to the Government about his membership in the HLK. (*See* Section IV.B.2, above.) Defendant clearly wants to undo his guilty plea, so much so that he is willing to contradict his sworn testimony to the Court. The Court does not believe that he is telling the truth about the advice that he received from his attorney.

Second, the Court does not think it likely that an attorney with Buffmyer's knowledge and experience would tell Defendant that he was certain to receive the maximum sentence for his offenses if he proceeded to trial. Nor is it likely that Buffmyer would meet with

Defendant 27 times but fail to discuss Defendant's possible sentencing exposure under the Guidelines if he was convicted of the charges, let alone mention that the Court has discretion to choose a sentence less than the maximum. It is even less likely that Buffmyer would fail to convey an extremely important communication from the Government containing its final plea offer and its view of Defendant's sentence calculations under the Guidelines. The Government's email contained sufficient information about Defendant's exposure under the Guidelines for him to make an intelligent decision about whether to plead guilty, and delivering that email would have satisfied counsel's duties under *Smith*. Thus, the Court is confident that Buffmyer fulfilled his duties as counsel and gave Defendant sufficient information about the Guidelines for him to make an informed decision about pleading guilty.

But even assuming Buffmyer advised Defendant that he faced a life sentence if he proceeded to trial, and did not discuss the Guidelines, the Court is not persuaded that Defendant was prejudiced by the deficiency in this advice. In other words, considering the totality of circumstances, the Court is not convinced that there is a reasonable probability that Defendant would have rejected the plea offer and proceeded to trial if he had received adequate advice about his sentencing exposure. For one thing, Defendant's prejudice claim is accompanied by an unrealistic view of his chances of success at trial. As discussed in the Court's order granting in part and denying in part Defendant's motion for relief from judgment (ECF No. 1919), Defendant believes that his temporary withdrawal from the HLK gives him a "complete defense" to the conspiracy charges, which is not the case. Defendant clearly rejoined the HLK and its activities after he was released from prison. The law is clear that a defendant's actions after withdrawal from a conspiracy can negate that withdrawal. *See, e.g., United States v. Lash*, 937 F.2d 1077, 1084 (6th Cir. 1991) ("Continued acquiescence [to the conspiracy] negates the withdrawal[.]") (citing *Hyde v. United States*, 225 U.S. 347, 371-72 (1912)).

In other words, Defendant has not offered a viable defense to the charges against him, or any other objective basis for submitting his case to the jury rather than accepting a favorable plea offer. His claim rests almost entirely on a *post hoc* assertion about what he would have done. Although Defendant points to counsel's advice as the tipping point for pursuing a guilty plea, the more likely explanation for Defendant's decision is that he finally accepted the fact that his co-conspirators were likely to testify against him, and therefore recognized that striking a plea deal would be in his best interests. In summary, Defendant has not demonstrated that his attorney provided ineffective assistance when advising Defendant about the possible consequences of accepting or rejecting the plea offer.

### D. Assistance at Plea Hearing (Issues 2, 8)

Defendant asserts that counsel should have corrected Defendant's statement that he was not taking medication and should have objected to the prosecutor's questions establishing a factual basis for the plea.

#### 1. Use of medication

At the plea hearing, Judge Bell asked Defendant whether he was "presently on any drugs or any medications" or had "any conditions that might affect [his] ability to understand and participate in these proceedings?" and Defendant responded, "No." (Plea Hr'g Tr. 4.) Defendant now contends that he was taking medication, that his attorney was aware of this, and that his attorney should have intervened to permit the Court to inquire further into Defendant's ability to proceed, or postponed the hearing.

Here, too, Defendant is bound by his statement under oath to the Court that he was not taking medication that might affect his ability to understand the proceedings. Moreover, the transcript of the plea hearing shows no sign that Defendant was impaired. Defendant contends that the prosecutor "coached and directed" Defendant to admit guilt, and that this was a sign of his

impairment.  However, Judge Bell asked Defendant almost all of the questions establishing the factual basis for the plea, and Defendant cogently answered all of them; there is no indication that he did not understand the proceedings or the consequences of his actions.

Defendant provides copies of medical records indicating that he was taking medication for back pain—including Norco, amitriptyline, and Neurontin—in late September 2013, about two weeks before his plea hearing.  (*See* ECF No. 1809-1, PageID.22727.)  However, those same records also indicate that Defendant was "[o]riented to person, place, and time" at his medical appointments, that his speech was "fluent," and that he was able to give "informed consent" to a lumbar injection.  (*Id.*, PageID.22728, 22729.)  If Defendant's medication impaired his ability to understand or participate in his legal proceedings, it does not show in his medical records or in the transcripts of his plea hearing.  Thus, there is no support for Defendant's contention that his attorney should have intervened to correct his response about taking medication, or that the Court would have rejected his plea had his attorney done so.

### 2. Prosecutor's questions

Defendant also contends that his attorney should have objected to the prosecutor's questions at the plea hearing, insofar as those questions covered subjects that were subject to the prosecutor's grant of immunity in 2000.  The prosecutor briefly questioned Defendant about two issues: Defendant's possession of a firearm and Defendant's involvement in ordering the firebombing of a house.  Defendant initially told Judge Bell that he never carried or used a gun (*id.* at 16), but the prosecutor reminded Defendant that he told the grand jury thirteen years earlier that he possessed a firearm that he turned over to the HLK for their use (*id.* at 19).  Defendant then corrected his earlier statement to the Court and acknowledged that he had possessed a firearm.  He also volunteered that there was "another time" as well.  (*Id.* at 19.)  As to the firebombing, the

prosecutor asked Defendant a single question about whether Defendant had ordered the firebombing of house in 1996 "as a leader" in the HLK, and Defendant confirmed that he had. (*Id.*)

There was nothing improper about the prosecutor's questions, and it was reasonable for counsel not to interject. Defendant asserts that his testimony was covered by the prosecutor's grant of immunity, but it is clear that Defendant possessed a firearm *after* he testified to the grand jury in 2000. The PIR refers to at least three instances in which Defendant possessed or used a firearm in 2008 (*see* PIR ¶¶ 168, 310, 347, 396, 620, 645, 683), one of which Defendant expressly acknowledged at his sentencing hearing. (*See* Sentencing Hr'g Tr. 24.) Thus, evidence of his possession of a firearm could not have been subject to the prosecutor's grant of immunity in 2000. Moreover, by voluntarily admitting these facts under oath, he waived whatever rights he had under the prosecutor's grant of immunity. Accordingly, Defendant has not shown that an attempt to rely on the grant of immunity, or any other objection by counsel to the prosecutor's questions, could have had any impact on the outcome of his case.

### E. Assistance after Plea (Issue 9)

Defendant contends that counsel failed to inform him that he could withdraw his plea due to the fact that Defendant was under the influence of medication at the time of his plea, and the fact that his plea was based on conduct "immunized" by his grand jury testimony. This claim is meritless because counsel had no obligation to affirmatively advise Defendant of his right to withdraw his plea, absent some sort of request or concern raised by Defendant. If Defendant wanted to withdraw his plea, or had concerns about it due to his medication or immunity, he could have raised the issue with his attorney. He does not contend that he did so.

Moreover, Defendant has not established that he could have withdrawn his plea if his attorney had pursued that option. After a court accepts a plea, the defendant cannot withdraw it as a matter of course. He can do so before sentencing only if the Court rejects the plea agreement

under Rule 11(c)(5) of the Federal Rules of Criminal Procedure, or if he can show a "fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2). After the court imposes its sentence, a plea can be set aside only on direct appeal or collateral attack. Fed. R. Crim. P. 11(e).

Defendant has not provided a "fair and just reason" for withdrawing the plea. As indicated, he confessed to the relevant facts under oath to the Court, after telling the Court that he was not taking medication that impaired his ability to understand the proceedings and that he understood the consequences of a guilty plea, and displaying his understanding in his responses to the Court's inquiry. Consequently, counsel was not ineffective in failing to provide advice about withdrawing the plea.

### F. Assistance at Sentencing (Issues 10 – 17)

Defendant asserts several deficiencies in his counsel's assistance at sentencing. Among other things, Defendant asserts that counsel was aware, before Defendant's sentencing hearing, that the Government would not file a motion for reduction of Defendant's sentence,[2] and counsel did not inform Defendant of this fact. The PIR stated that "the U.S. Attorney's Office has advised they will no longer be filing a motion to request or support a motion for a downward departure under USSG 5K1.1." (PIR, PageID.12755.)

At his sentencing hearing, Defendant acknowledged that he had "an opportunity to review and discuss [the] presentence report with [his] attorney[.]" (Sentencing Hr'g Tr. 5-6.) If that is the case, then presumably Defendant would also have known before the sentencing hearing that the Government did not intend to file such a motion.

More importantly, Defendant does not indicate how knowledge of the Government's intentions could have changed the outcome. He contends that he could have withdrawn his plea,

---

[2] At sentencing, the prosecutor explained that Defendant lied to the Government and refused to accept responsibility for his actions during his proffer sessions, which is why it did not believe that a further reduction in his sentence was warranted. (Sentencing Hr'g Tr. 32-33.)

but that is not the case. His plea did not depend upon a motion for a reduction in sentence. As discussed above, Defendant entered his plea knowing that the Government had not promised to seek a reduction in his sentence.

Counsel also supposedly told Defendant that Defendant could not challenge the "weights and leadership enhancements." Defendant is presumably referring to the weight of the cocaine and marijuana for which he was deemed responsible in the PIR (which was used to support his base offense level of 32) and his leadership role (which was used to increase in his offense level). Defendant does not indicate what objections could have been made, however. Thus, he has not shown unreasonable performance or prejudice.

Defendant contends that his counsel did not adequately postpone the sentencing hearing to accommodate his recovery from back surgery. Defendant's sentencing hearing was originally scheduled for June 18, 2014, but his attorney requested an adjournment because Defendant underwent back surgery on June 9, 2014. (Mot. for Leave to File Mot. for Continuance, ECF No. 1191.) Counsel informed the Court that Defendant would be taking medication for approximately 30 days after surgery, and that "an adjournment of 4 to 6 weeks would likely be sufficient time for Defendant Cisneros to recuperate sufficient to attend and participate at his sentencing." (Def.'s Mot. for Adjournment of Sentencing, ECF No. 1198.) The Court granted Defendant's motion and scheduled the sentencing hearing for July 24, 2014. (Order, ECF No. 1193.)

Defendant claims that he was still taking opiates and muscle relaxers at the time of his sentencing hearing, and that he was not in the "proper state" to articulate his positive role and work in the community, fighting "gang involvement." (Am. § 2255 Mot., PageID.22223.) To the contrary, Defendant was able to articulate his involvement in the community, and his attorney did the same. His attorney also filed a written memorandum detailing Defendant's work in the

community, supported by newspaper articles and letters from individuals who praised Defendant's efforts and described his transformative impact on their lives. (*See* Sentencing Mem., ECF No. 1187.) Defendant does not indicate what else he would have presented that was not already in front of the Court. Thus, Defendant has not shown that he was prejudiced by counsel's failure to seek an additional adjournment of his sentencing.

Defendant believes that his counsel did not do enough to establish Defendant's "complete dissociation" from the HLK in 1999. As discussed above, however, this fact was not contested and Judge Bell apparently accepted it. Moreover, to the extent it was even relevant, Defendant's dissociation from the HLK did not necessarily help him. As Judge Bell observed, Defendant's decision to voluntarily rejoin the HLK after leaving it was "almost worse" than if he had never left at all. (Sentencing Hr'g Tr. 35.)

Similarly, Defendant contends that counsel failed to present evidence showing that the HLK was "not recognized" for a period of time, and that Defendant had no interaction with the organization during this time. (Am. § 2255 Mot., PageID.22224.) However, Defendant does not indicate how this evidence would have impacted his plea or sentence. Even if there was a time when Defendant was not involved with the HLK, which the Court recognized, it does not change the fact that Defendant actively participated in its criminal schemes.

Defendant also believes that he would have received a lesser sentence if his attorney had shown the Court that the information he provided at his proffer interviews was used to sentence a co-defendant. Defendant offers no support for this belief. Judge Bell accepted a reduction in Defendant's offense level because of his assistance to the Government. There is no reason to believe that the effects of Defendant's assistance on the sentencing of a co-defendant would have had any additional impact.

Defendant faults his attorney for withdrawing objections to the firearms enhancement. Defendant apparently contends that he only partially participated in performing "security" for the HLK, or did not participate at all, on two unidentified nights. (Am. § 2255 Mot., PageID.22224.) He does not, however, deny that he possessed a firearm in connection with his involvement with the HLK, which he admitted at both his plea and sentencing hearings. Counsel did not act unreasonably by failing to raise a meritless objection.

Defendant also contends that counsel should have sought a downward departure to account for a "completed term of imprisonment" under U.S.S.G. § 5K2.23. However, that section applied only if the "term of imprisonment resulted . . . from another offense that is relevant conduct to the instant offense of conviction . . . *and that was the basis for an increase in the offense level for the instant offense under Chapter Two (Offense Conduct) or Chapter Three (Adjustments)*.'" *Penaloza*, 648 F. App'x at 523 (quoting U.S.S.G. § 5G1.3(b) (2013)). Defendant's term of imprisonment did not satisfy these requirements.

The Government acknowledges that Defendant served 64 months for a 1999 conviction for delivery of less than 50 grams of cocaine (*see* PIR ¶ 888.), and that this offense was relevant conduct to the racketeering conviction. However, § 5K2.23 does not apply because Defendant's drug offense did not impact his sentence for the racketeering conspiracy. Review of the PIR indicates that the 1999 drug conviction did not increase his offense level for the racketeering offense.

For a racketeering offense, the base offense level is the level applicable to the underlying racketeering activity. U.S.S.G. § 2E1.1(a)(2) (2013). Defendant's base offense level was determined by his involvement in a conspiracy to distribute cocaine and marijuana. (PIR ¶ 870.) The PIR used the base offense level for offenses involving at least 1,000 kilograms but less than 3,000 kilograms of marijuana. *See* U.S.S.G. § 2D1.1(c)(4) (2013). The PIR determined that

Defendant was responsible for 1,249 kilograms of marijuana equivalent, which included "at least" 5 kilograms of cocaine and 550 pounds of marijuana. (PIR ¶ 870.) According to the PIR, the 5-kilogram cocaine estimate was a "conservative" one. (*Id.* ¶ 681.) It could have included any of the following: Defendant's possession of half a kilogram of cocaine when he was arrested in 1998 (*id.*); Defendant's admission that he personally distributed 3 kilograms of cocaine before his arrest in 1998 (*id.* ¶ 636); and Defendant's involvement with co-conspirators responsible for distributing almost 100 kilograms of cocaine in 2009 and 2010 (*id.* ¶ 838). The 50 grams of cocaine from Defendant's 1999 drug conviction could not have meaningfully added to the enormous quantity of drugs used to determine his base offense level and, thus, that conviction could not have been "the basis for an increase in [his] offense level." *See Penaloza*, 648 F. App'x at 523. Accordingly, § 5K2.23 did not provide a basis for requesting a downward departure, and counsel was not ineffective for failing to raise the issue.

For all the foregoing reasons, Defendant's claim that he received ineffective assistance of counsel at the trial level is meritless on the record before the Court.

***Ground Two:* Invalid Plea**

Next, Defendant contends that his plea was invalid because it was "unlawfully induced," involuntary, and made without understanding the charges against him and the consequences he faced. (Am. § 2255 Mot., PageID.22225.) Specifically, Defendant contends that his plea is based on "pre2000 conduct" that was immunized by his grand jury testimony, and that he did not understand the charges against him or the consequences of his plea because he was under the influence of medication.

This claim is without merit for reasons discussed in Ground One. The immunity agreement in 2000 does not undermine the validity of Defendant's plea in 2013. By entering that plea, he waived any challenge to the Government's evidence against him. Moreover, Defendant

misperceives the effect of the immunity agreement. It immunized his *statements* to the grand jury in 2000; it did not immunize his conduct.

As to his claim that he was under the influence of medication, Defendant is bound by his sworn statement that he was not taking medication that might affect his ability to understand and participate in his plea hearing. There is no support for his assertion that he was unable to understand the consequences of what he was doing. Accordingly, this claim is meritless.

### *Ground Three:* **Failure to Disclose Favorable Evidence**

Defendant claims that the Government withheld evidence that he retired from the HLK in 1999. Under *Brady v. Maryland*, 373 U.S. 83 (1963), "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material, either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. "There are three components of a true *Brady* violation: [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Prejudice (and materiality) is established by showing that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 281 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682.

Defendant's *Brady* claim is meritless because any evidence of Defendant's withdrawal from the HLK was immaterial. As discussed in Ground One, the Government did not dispute that Defendant left the HLK in 1999, and the Court accepted it as fact. Accordingly, there is no reasonable probability that, had any additional evidence of that departure been disclosed, the result of the proceeding would have been different.

***Ground Four:*** **Conviction Obtained by Use of Coerced Confession**

Defendant apparently argues that he pleaded guilty because he gave a "coerced" confession to the prosecutor during his proffer interviews in February and October 2013. Defendant contends that his confession was coerced for the following reasons: the motion to dismiss the indictment exposed his 2000 grand jury testimony and put his "life" and "well being" at risk (Am. § 2255 Mot., PageID.22227); his attorney told him that he would be sentenced to life in prison unless he confessed and cooperated; Defendant thought that the Government wanted his help, when in fact his attorney sought the proffer; the Government breached the plea agreement, ostensibly because it did not recommend a reduction in his sentence; and Defendant's confession and indictment were derived from his immunized grand jury testimony.

Generally,

> where a guilty plea is otherwise voluntarily and intelligently made with the advice of competent counsel and where the factual basis for the plea fully establishes guilt, the plea is not rendered involuntary merely because the defendant may have been motivated by a statute or state conduct later found to be unconstitutional

*Campbell v. Marshall*, 769 F.2d 314, 319 (6th Cir. 1985). Consequently, according to the Supreme Court, a habeas petitioner is not entitled to a hearing, or any other relief, where he alleges and proves no more than that his plea was motivated by a coerced confession. *McMann v. Richardson*, 397 U.S. 759, 768 (1970). As the Court explained,

> For the defendant who considers his confession involuntary and hence unusable against him at trial, tendering a plea of guilty would seem a most improbable alternative. The sensible course would be to contest his guilt, prevail on his confession claim at trial, on appeal, or, if necessary, in a collateral proceeding and win acquittal, however guilty he might be.

*Id.*

After *McMann*, the Supreme Court clarified that a guilty plea is not the product of a coerced confession where the allegedly coercive conduct "was not of such an 'enduring effect to

make involuntary a plea of guilty entered over a month later.'" *Cochran v. Norvell*, 446 F.2d 61, 64 (6th Cir. 1971) (quoting *Parker v. North Carolina*, 397 U.S. 790, 796 (1970)). In *Parker*, the defendant had the assistance of counsel for a month before he pleaded guilty, and there were no "threats, misrepresentations, promises, or other improper acts by the State" after the allegedly coerced confession. *Parker*, 397 U.S. at 796. Consequently, "the connection, if any, between [the defendant's confession and his plea of guilty had 'become so attenuated as to dissipate the taint.'" *Id.* (quoting *Nardone v. United States*, 308 U.S. 338, 341 (1939)).

The same is true here. Petitioner is not entitled to relief simply because he asserts that his decision to plea guilty was due to a coerced confession. He offers no reason to believe that his decision to plead guilty was the product of coercive conduct by the Government.

Moreover, the record disputes Defendant's claim that his plea was motivated by any form of coercion. At his plea hearing, he expressly denied that anyone had threatened or coerced him to plead guilty. (Plea Hr'g Tr. 9.) He also affirmed that his decision to plead guilty was taken "freely and voluntarily." (*Id.*) "[A] defendant who expressly represents in open court that his guilty plea is voluntary may not ordinarily repudiate his statements to the sentencing judge." *Todaro*, 982 F.2d at 1030. Accordingly, Defendant's claim of coercion is meritless.

*Ground Five:* **Conviction for RICO Offense (insufficient evidence)**

Defendant contends that his brief involvement with the HLK, combined with the fact that his grand jury testimony in 2000 was subject to an immunity agreement, means that the evidence was not sufficient to convict him of a racketeering conspiracy. This claim is meritless because he pleaded guilty to all the elements of such a conspiracy. In other words, his conviction is based upon his acknowledgement of guilt at the plea hearing, not upon his statements to the grand jury or anything else. His plea provides a sufficient basis for his conviction.

Moreover, Defendant's guilty plea waived his right to object to the sufficiency of the evidence against him. *See United States v. Martin*, 526 F.3d 926, 931-33 (6th Cir. 2008) (holding that an unconditional guilty plea waives the right to challenge the sufficiency of the evidence). Accordingly, Defendant's claim is meritless.

**Ground Six: Conviction Obtained by Use of Court Error**

Defendant contends that the Court erred when it accepted Defendant's guilty plea based on "immunized" conduct, and conduct that was not sufficient to support the charges. As explained above, Defendant's *statements* were immunized, not his conduct. Moreover, there was no error. Defendant voluntarily admitted guilt to one of the charges against him in exchange for the dismissal of another charge. The Court properly accepted his plea.

**Ground Seven: Sentence Based on Erroneous Guideline Scoring**

Defendant asserts a number of errors in the Court's scoring of the guidelines, including application of a base offense level of 32, the firearms enhancement, and the leadership enhancement.

Defendant does not state a viable claim, for several reasons. To the extent he asserts that the Court improperly applied the leadership enhancement, the Court of Appeals considered this claim and rejected it. *See Penaloza*, 648 F. App'x at 530 (holding that "it was not plain error to find that Cisneros acted as a manager or supervisor under U.S.S.G. § 3B1.1" because he admitted ordering other HLK members to firebomb a house and he did not contest the PIR's recitation of his leadership history). "It is . . . well settled that a § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law." *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999); *accord Foster v. Chatman*, 136 S. Ct. 1737, 1758 (2016) ("[A]s a general rule, federal prisoners may not use a motion under 28 U.S.C. § 2255 to relitigate a claim that was previously rejected on

appeal."). Defendant does not identify any exceptional circumstances that would permit him to relitigate that claim here.

To the extent Defendant contends that the Court erred in applying the firearms enhancement, his argument is plainly meritless because he admitted possession of a firearm at his plea hearing.

To the extent he contends that the Court erred in calculating his base offense level based on participation in a conspiracy involving the distribution of more than 1,000 kilograms of marijuana equivalent, Defendant does not indicate why this decision was in error.

Furthermore, Defendant's challenge to the scoring of the guidelines is meritless because it is not cognizable in this action. Absent extraordinary circumstances, claims of non-constitutional error in sentencing may not be raised in a § 2255 proceeding. "Courts have generally declined to collaterally review sentences that fall within the statutory maximum." *United States v. Peterman*, 249 F.3d 458, 462 (6th Cir. 2001). A mistake in application of the advisory sentencing guidelines does not "affect the lawfulness of the [sentence] itself[.]" *Snider v. United States*, 908 F.3d 183, 191 (6th Cir. 2018) (quoting *United States v. Addonizio*, 442 U.S. 178, 187 (1979)); *see Gibbs v. United States*, 655 F.3d 473, 479 (6th Cir. 2011) ("A challenge to the sentencing court's guidelines calculation . . . only challenges the legal process used to sentence a defendant and does not raise an argument that the defendant is ineligible for the sentence she received.").

"[N]onconstitutional errors, such as mistakes in the application of the sentencing guidelines, will rarely, if ever, warrant relief [under § 2255]. . . . [O]nly the most serious defects in the trial process will merit relief outside of the normal appellate system." *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996). This standard is met only by "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent," such as when there was "a fundamental defect which inherently results in a complete miscarriage of justice[.]" *Hill v. United*

*States*, 368 U.S. 424, 428 (1962) (internal quotation marks and citation omitted). Not "every asserted error of law can be raised on a § 2255 motion." *Davis v. United States*, 417 U.S. 333, 346 (1974).

There are no exceptional circumstances that would justify granting relief in this case. Defendant's sentence falls within the statutory maximum. He does not claim that he is actually innocent or that the Court violated his rights under the Constitution. He simply disagrees with the Court's application of the advisory guidelines. That claim is not cognizable in this action. *See Snider*, 908 F.3d at 191 ("[E]very other court of appeals to have looked at the issue has agreed that a defendant cannot use a § 2255 motion to vindicate non-constitutional challenges to advisory guideline calculations.").

### *Ground Eight:* Amendment 782 to the Sentencing Guidelines

Next, Defendant claims that he is entitled to a reduction in his sentence under Amendment 782 of the Guidelines, which took effect on November 1, 2014. Amendment 782 retroactively reduced the applicable guidelines range for certain drug offenses by changing the drug quantity table in the Guidelines.

Defendant's request for a reduction in sentence based on Amendment 782 should be brought as a separate motion under 18 U.S.C. § 3582(c)(2), which allows a defendant to file a motion to reduce the term of imprisonment, where the defendant "has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission" through a retroactive amendment to the sentencing guidelines. 18 U.S.C. § 3582(c)(2); U.S.S.G. § 1B1.10(a)(1). His request is not properly raised in this action. *See Shaw v. United States*, 604 F. App'x 473, 477 (6th Cir. 2015) (finding that a retroactive change in the guidelines was not relevant in a motion under § 2255).

***Ground Nine:*** **Conviction Obtained by Violation of Privilege Against Self-Incrimination**

In a variation on his other claims, Defendant asserts that his conviction was obtained through a violation of his "priv[i]lege against self-incrimination" in the Fifth Amendment. (Am. § 2255 Mot., PageID.22234.) Defendant contends that the Government used his immunized testimony to persuade him to cooperate and breached the plea agreement by not seeking a reduction in his sentence.

Contrary to Defendant's assertion, his conviction is based on his voluntary statements and admissions to the Court. It is not based on his immunized grand jury testimony or his admissions to the Government at his proffer interviews. Furthermore, he waived his Fifth Amendment rights and any challenge to his pre-plea confessions when entering his plea. Moreover, the Government did not breach the plea agreement because it did not promise to seek a reduction in his sentence.

***Ground Ten:*** **Ineffective Assistance of Appellate Counsel**

In a supplement to his amended motion under § 2255, Defendant contends that his appellate counsel was ineffective for failing to raise Grounds One to Nine on appeal. This claim is meritless because Grounds One to Seven and Nine are meritless. Appellate counsel is not ineffective for failing to raise meritless claims on appeal. *See Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013). In addition, Defendant cannot claim that his appellate counsel was ineffective for failing to raise the issue in Ground Eight because Amendment 782 did not take effect until after Defendant filed his appeal. Moreover, Defendant cannot claim that he was prejudiced by that failure because Defendant can still present that issue in a motion under 18 U.S.C. § 3582(c)(2). His attorney's failure to raise the issue on appeal does not in any way impair Defendant's ability to raise it in a proper motion.

***Ground Eleven:*** **Administrative Segregation / Isolated Confinement**

In his second supplement to his amended motion under § 2255, Defendant asserts that he has been subjected to cruel and unusual punishment by the Bureau of Prisons (BOP) because he has been confined in segregation for 20 months without a meaningful evaluation of his status. This claim is not cognizable in this action because "[c]hallenges to conditions of confinement rather than to the legality of the confinement itself are not the proper subject of a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence." *Lee v. United States*, No. 5:06-cv-86, 2006 WL 2039976, at *1 n.2 (W.D. Mich. July 19, 2006) (citing *Sullivan v. United States*, 90 F. App'x 862 (6th Cir. 2004)); *see also Berryhill v. United States*, No. 1:15-cv-815, 2016 WL 2610258, at *8 (N.D. Ohio May 6, 2016) (collecting cases). "Instead, such claims should be brought as civil rights claims pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971)." *Id.* Accordingly, Ground Eleven is meritless as a basis for relief under § 2255.

## V. Conclusion

For the reasons stated, Defendant's claims are meritless. Moreover, no other evidentiary proceedings are required because the record of the case conclusively shows that Defendant is not entitled to relief. In short, Defendant's amended motion under § 2255 will be denied.

Under 28 U.S.C. § 2253(c), the Court must determine whether to issue a certificate of appealability. A certificate should issue if the movant has demonstrated "a substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit has disapproved of issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Under

*Slack*, to warrant a grant of the certificate, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 529 U.S. at 484.

The Court has carefully considered the issues in this matter and finds that reasonable jurists could not find that this Court's denial of Defendant's claims was debatable or wrong.

An amended judgment and order will enter consistent with this Opinion.


Dated:   October 24, 2019                              /s/ Janet T. Neff
                                                       Janet T. Neff
                                                       United States District Judge